We'll hear the next case, United States v. Ho. Rosenberg, I represent Patrick Ho. He was convicted on seven counts. And subject to the Court's leave, I would propose to address them as follows. First, counts 8 and 6, which are substantive money laundering in Uganda and conspiracy to engage in money laundering, respectively. And then counts 2 and 3, which allege violations of the domestic concern section of the FCPA, Section 78DD2, in Chad and Uganda, respectively. And then counts 4 and 5, which allege violations of the within-the-territory section of the FCPA, Section 78DD3 in Chad and Uganda, respectively. Now, with respect to counts 8 and 6, Dr. Ho was convicted on count 8 of transporting funds to promote a specified unlawful activity in violation of the money laundering statute. The definition of that term, specified unlawful activity, was amended in 1992 to include, quote, any felony violation of the Foreign Corrupt Practices Act, end quote. At that time, the FCPA did not include Section 78DD3. That section, 78DD3, was added six years later, in 1998. We objected to the jury instruction that would allow the jury to find that a violation of 78DD3 was a specified unlawful activity. The objection was overruled, and we submit that that was error. We further submit that the case of JAMM v. International Financial Corp., which was decided after the judgment in this case, or after the trial in this case, which invoked a longstanding canon of statutory construction known as the reference canon, is directly applicable and demonstrates the error in the case. It stated that, quote, a statute that refers to another statute by specific title or section number in effect cuts and pastes the reference statute as it existed when the referring statute was enacted without any subsequent amendments. End quote. Sotomayor, I understand at least one of the government's arguments in response. It's that the money-laundering statute is concerned with the movement of dirty money, but not with how the money got dirty, and, therefore, it doesn't matter what statute made it illegal. What's your response to that? I think that given the clarity of the money-laundering statute, the specific reference to the Foreign Corrupt Practices Act, that answer cannot fly. Because the statutory canon applies, and it demands that the reference be only to 78 D.D. 2. So they can't broaden it by saying the statute meant something else, not in light of that canon. The statute says any felony violation of the Foreign Corrupt Practices Act. On its face, why wouldn't that pick up any provision in any violation? Because the ---- Why do we even reach the rules of construction if the language is clear? Because I think the ---- because the language is not clear. It's certainly clear that it refers to a particular statute. Of course, that's clear. Any felony violation of the Foreign Corrupt Practices Act is a violation of D.D. 3, not a violation of the Foreign Corrupt Practices Act? It is not, Your Honor. It is not, Your Honor, not for purposes of this statute, because the Supreme Court has clearly stated that when one statute, a referencing statute, refers to a ---- it uses the title of a referred statute, that means the statute at the time it was enacted. But, you know, one of the other concerns that's been raised is that a defendant is entitled to notice of what is ---- what is prescribed by law. He is unlikely to think, well, I'm committing this crime in year X, but did the statute 10 years earlier when the money-laundering statute was passed prohibit this, or is he going to look at what's prohibited now? I mean, that would suggest that it's the money-laundering statute's prohibitions as of the time the defendant is acting, wouldn't it? Verrilli, Your Honor, I don't think that the fact that the defendant would have to or might look at various statutes or even look at statutory history would really cut against the statement that and the clarity of the canon. The canon applies. Now, it's unlikely that a defendant in any event looks through statutes to decide beforehand. The more likely point is that counsel should look at it and decide whether something is prohibited by a statute or not. And counsel can certainly look through. Sotomayor, I can suggest to you the canon only applies if we're not clear as to what Congress's intent was. Where it says any violation of the Foreign Corrupt Practices Act, and where it would seem that Congress would have no interest in defendants going to books and figuring out what was prohibited at a time earlier than their own conduct, there doesn't seem to be any reason not to read any to mean any. Verrilli, Your Honor, there is inherently an ambiguity when the --when the referencing statute cites another statute, when it gives the name of the other statute. And that's precisely why the Reference says that, that when there's a reference like that, there's an inherent ambiguity. Verrilli, There are cases from the Supreme Court that say when one statute names another, the other means the statute, the referenced statute at the time it was enacted. Okay. And there's a long list of specified unlawful activity, and most of them name a specific section of an act, but not here. I mean, does that not suggest that Congress wanted all of the Foreign Corrupt Practices Act to be covered? No, Your Honor. I think, as the government points out, Congress is presumed to legislate against the background and knowing the background of the statutory canons and interpretation, and it's a longstanding statutory canon, as Jams said, and this goes back to Supreme Court as early as 1838, that says when one --"when a referencing statute names another statute, it is without subsequent amendment." Congress knew what it was doing. We presume it knew what it was doing, and therefore, it meant the FCPA as it wanted. And, of course, it could have done differently. It could have been a lot of time left. I don't know if you wanted to move on to one of your other points. Your Honor, if I may, although I think that we'll have to rely on our briefs for other points, if I may direct the Court's attention to Counts 4 and 5, which allege a violation of 78DD3. That section, by its expressed terms, does not apply to domestic concerns. The indictment, however, in connection with other allegations, stated the grand jury charges the defendant being a domestic concern, and it continues. The grand jury could not find that Dr. Ho was a domestic concern, and then for purposes of 78DD2, and then find that he was not a domestic concern. Robertson, let's say you're right. What would the remedy be? I mean, in other words, you're right that you can't be he could not have been convicted on both 4 and 5. What would the remedy be? Dismissal of the counts. And it must be that one. Both counts? Of both of 78DD4 and 5, yes, Your Honor, because the grand jury found that he could not be convicted of those. And the reason that's required, Your Honor, is because the error here is that he was indicted on them. He was indicted on them. We objected to them at the time, raised the point. The only remedy at that point could be the dismissal of those counts. Your Honor, I see my time is up. Thank you. We'll hear from the government. You have some time for rebuttal. Thank you. May it please the Court. My name is Douglas Zolkind. I represent the United States in this appeal, as I did at the trial. Let me start with the question of the reference canon and whether 78DD3 is a proper predicate for the FCPA. It is, Your Honor, and I think JAM does not control this case at all. And it's important to look at how JAM was decided. In JAM, the Supreme Court started by analyzing the text of the statute itself. And that's really what drove the Court's decision in JAM. It was an analysis of the statutory text. Only after reaching that conclusion did the Court say, based on the reference canon, that the reference canon reinforced what the text already made clear. And so that's when they say that the more natural reading of the IOIA, which they've just discussed, is confirmed by the reference canon. Exactly, Your Honor. And there's a case by the decision by this Court that I think is directly on point. And we didn't cite it in our brief, but it's New York v. HHS 556F390, a 2009 decision by Judge Raggi. And there, this Court confronted the reference canon, and the question was, okay, there's a statute that refers to another statute. The second statute had been recently amended, and the question was, do those recent amendments get incorporated into the statute? And the Court, looking at the reference canon, said the canon does not apply because the referring statute is crystal-clear on its face and its incorporation of the second statute in its entirety. And the Court went on to say, quote, this Court, where statutory text is clear, we have no reason  to reject the reference canon's intent. This Court also said, quote, the reference canon is not a categorical rule that compels courts to always read statutory cross-references as pointing at their original targets. So I think the mode of analysis that this Court took in the New York v. HHS case is exactly the mode of analysis the Court should take here. And one other point on the reference canon, as this Court is, I'm sure, aware, there are lots and lots of Federal statutes that are not in the New York v. HHS, not just Section 1956, that include cross-references to other Federal criminal statutes. RICO is one example, with a long list of racketeering predicates. The wiretap statute, Section 2516, is another example, the Travel Act. There is not a single case that the appellant has cited, nor any that the government has been able to identify, where a court has said that one of those references to another criminal statute refers to the criminal statute as it existed at some earlier point in time rather than as it exists today. So the statute is clear, incorporates the FCPA as a predicate in its entirety. Let me move to the question about whether the indictment was, as the appellant puts it, repugnant because it includes an allegation that the defendant was himself a domestic concern. Well, I don't know if it was repugnant, but when you look at DD2 and DD3, even at their headings, they do seem to be mutually exclusive. DD2 is prohibited foreign trade practices by domestic concerns, and DD3 is the same thing, prohibited foreign trade practices by persons other than issuers or domestic concerns. So how can you be guilty of both? Your Honor, again, it's the statutory text is crystal clear, and I think that is where the Court's analysis should begin and end. Section DD3 says explicitly that it applies to, quote, any person other than an issuer or a domestic concern. And there is no dispute that Patrick Ho is any person other than an issuer or a domestic concern. So undisputed that he fits within the plain language of the statute. That should end the Court's inquiry. And it would have been very easy for Congress to stop the argument as he's not a domestic concern. The government does say that. The government informed the defendant well in advance of trial that despite that language in the indictment, the government was not proceeding on that theory. At no point did he ever labor under a belief that the government was proceeding on a theory that he was a domestic concern. And, in fact, the parties entered into a stipulation for trial which said, in substance, that he is not a domestic concern. So his DD2 conviction, you're saying, is as an agent and an aiding and abetting theory? He was convicted under — on DD2 as being an agent of a domestic concern. Correct, Your Honor. And that's why those should we not view DD2 and DD3 as giving you the alternative. Either you try the person as an agent of the domestic concern on a Section 2 theory, or you try him as a person other than a domestic concern or its agent. Yes, Your Honor. The answer just comes down to what the statute says. And it would have been very easy for Congress to write the statute, in fact, probably easier for Congress to write the statute to say that DD3 applies to any person not covered by DD2. That would have been simpler, but Congress didn't do that. Instead, it did something narrower. It said DD3 applies to any person other than a domestic concern, as defined in DD2. But it explicitly did not exempt agents of domestic concern. But on the theory that you're pursuing DD2, does DD3 become almost a lesser-included offense? I mean, you've got to prove everything you're proving for DD3, except that there was a foreign concern involved, a domestic concern involved. I'm sorry. It's not a lesser-included, Your Honor. They're — each offense has different elements. So for DD2, you need to be a domestic concern or an agent, and you also need to use interstate commerce or a facility of interstate commerce. But it can happen anywhere in the world. Whereas for DD3, it only applies to foreign persons and their agents, and of course, their agents could be U.S. persons. But it only applies to acts taken within the territory of the United States, and there's no interstate commerce requirement. So the statutes are just different. Do you think in this case the district court could have imposed consecutive sentences for these crimes?  Because it was punishing what extra conduct, or what distinct conduct? I think Congress — so the distinct conduct as to DD2, the convictions on DD2, the conduct was that Patrick Ho made use of this U.S.-based purportedly charitable organization, and by making use of this organization based in the U.S., the contacts in New York and outside Washington, D.C., carried out a foreign bribe. I understand that. Now, what more, not captured by that, is captured by the — By the DD3? Yes. Yes, Your Honor. So the additional conduct captured by DD3 is that Patrick Ho entered the territory of the United States himself and carried out actions within the United States in furtherance of this scheme. The DD2 counts could have been proven without any physical conduct. In Hong Kong or wherever. Exactly right. Okay. So they are — the two statutes do target distinct wrongs. That's clear from the statutory language. And although there's no reason to resort to legislative history, and we don't think the Court should. What are the two distinct wrongs here? I mean, so some of it took place in the U.S., some of it took place outside. But what are the same schemes, right? Same schemes, Your Honor, yes. So what is the distinct wrongs in this case? Again, the distinct wrong as to the domestic concern counts, the DD2 counts, was the use of a U.S. organization, a purportedly charitable organization, one registered with the IRS as a charitable organization, and using that and all of the infrastructure available to organizations from this country to use that organization to carry out the crime, that's — that's the DD2 distinct harm. And the DD3 distinct harm is having a foreign national enter the territory of the United States and take — and taking actions within the territory of the United States in furtherance of a foreign bribery scheme. So is the theory bad enough that you should do this from Hong Kong, but when you actually come into the United States to do it, we want to penalize that in particular? Is that the theory? Exactly, Your Honor. And — and again, it's not — it is not uncommon for there to be different federal criminal laws that can overlap to some extent, so that in certain circumstances, someone can violate both the Wire Fraud Act and the Bank Fraud Statute or the Wire Fraud Conspiracy Statute in Section 371, and in other circumstances, only violate one or the other. And so it is not uncommon for there to be some degree of redundancy, and it's always, obviously, the district judge who has the discretion, if there's a conviction on more than one count, to decide whether the sentences should be concurrent if they're fundamentally the same harm. But here, again, I think since the statutory text is clear, there's no reason to look to the legislative history, but if the Court were to do that, as the — as the appellant argues, I think, to Your Honor — to Your Honor's point, Judge Radji, the legislative history does make clear that when DD3 was added, it was to make sure that any foreign person who enters the United States and takes actions in furtherance of a bribery scheme can be prosecuted. And I think that understanding is perfectly in line with the government's and Judge Preska's interpretation of the — of the statutes, which is that they are not mutually exclusive. I know counsel's time is up, but may I ask one question? I just want to ask you a question about the wire transaction or the money laundering, I should say, achieved through a wire transaction with respect to Uganda. I think that's the transaction that goes Hong Kong to Uganda with the clearance going through New York. That's correct. Your — your adversary suggests that there's a due process jurisdictional concern with that prosecution in the sense that how would a person expect to be hailed into a U.S. court when he wires money from Hong Kong to Uganda and it coincidentally goes through New York clearing institutions? Tell me why we shouldn't have a concern. Two responses, Your Honor. First, I don't think that's a claim that the appellant is raising, in other words, a due process argument. As I understand it — I thought in his brief he — or in — perhaps it was the colloquy I saw with the court when it was raised that you — you argued that this is only a jurisdictional point, not — and he said, but there was a due process component to — That is correct. Your Honor is correct. He did raise it at some point below, but it is not one of the bases on which he appealed. But to answer the Court's question, I think this — this particular issue has been addressed in a series — one decision by this Court, not — not answering the question exactly, but highly relevant to it, is the Dacoret decision. We cited that in our brief. And in that case, the Court held that when you had the exact same scenario here, that is, an international wire transfer where funds were processed by a U.S. correspondent bank, that the funds were here in the United States and could be seized. And so I think that goes to the question that is raised in — in the appellant's brief as to whether the funds went to and from the U.S. Dacoret says very clearly, in this kind of transfer, the funds are here in the U.S., therefore, we'd — we'd submit to the Court they went to here. And as to the Court's question about a due process concern, I think building on Dacoret are two other decisions I'd cite to the Court. One is Bank Julius from the District of D.C. That's cited in our brief. And another — another decision, Previzon, which isn't cited, but the site is 251 F. Supp. 3, 684, and that's a 2017 decision by Judge Pauly. And in both Judge — in both, excuse me, the Previzon case and the Bank Julius case, the Court was again confronted with international wires that were processed by U.S. intermediary banks, and the Court in both cases held that the — the processing in the United States was domestic conduct, that it was — it was merely ricochet off U.S. correspondent banks. But I guess the due process argument is, does everybody know that? I mean, does anybody doing a dollar-denominated transaction, a dollar-denominated wire know that you can't do that without going through one or two U.S. correspondent banks? There was certainly evidence in the record, Your Honor, that this defendant, Patrick Ho, was a highly sophisticated international businessman. He traveled around the world assisting and carrying out — executing multimillion-dollar energy deals, whether it was from Mexico or places in Africa, Asia, Europe. So I think there was certainly more than sufficient evidence as to this particular defendant that, yes, like any sophisticated businessperson, you know if you're sending U.S. dollars from — excuse me, from Hong Kong to Africa, that those are going to be cleared and processed by a U.S. bank. And that's what these were, U.S. dollars? These were U.S. dollar wire transfers, which in virtually every case — I mean, not exclusively, there are exceptions, but in the typical case would be processed here in the United States by a U.S. bank. Or two. Yeah, exactly. And in any cases, it's more than one because it depends if they're on the same network. So here, I went to one U.S. bank, that bank transferred it to another bank, and then ultimately it left the United States. Thank you. Thank you. We'll hear the rebuttal. Thank you. As for the first point, returning to the reference canon point, I think the government's argument is that this isn't ambiguous because the statute says Foreign Corrupt Practices Act. But if that were correct, then the reference canon would simply be a nullity. Right. But let's — let's — I mean, you've got this great language in JAM. You know, it's terrific. But it seems like that's the language that's creating the ambiguity. And so do you have any case, any instance where this canon has been applied to the money-laundering statute or to RICO or to anything else like that, a criminal statute that lists predicates? I do not have a case such as that. I only have the clear statement in JAM, which is the reiteration of a clear statement by the Supreme Court from 1838 in the case of — forgive me, Your Honor. Let me — go ahead. Well, forgive me, the case of Kendall v. The United States. The point being that this is something that Congress is presumed to know, presumed to legislate against, and can clearly change in effect simply by saying either by having broader categories, which it does in some instances, where it says any violation of a federal narcotic — or state narcotic statute. It could have said it was a federal or state bribery statute or by saying as amended. Even JAM talks about references to discovery rules, and it cites a case by Judge Gorsuch then from the Tenth Circuit that references the federal rules of civil procedure. And it says, well, that, of course, means the federal rules of civil procedure right up until today. And so why isn't this like that? Because this is precisely the name of a federal statute, and Congress is presumed to understand when it — when it names a statute as it did, that it names the statute as of that time. But there's no court that has ever held that with respect to a criminal statute like the money laundering statute. We don't cite any such case. Perhaps this is repetitive, but the problem with JAMS is that it doesn't, for you, I think, is that it doesn't start with the reference canon. It cites it to explain why what it considers the natural reading of the statute is indeed the way to go there, that they say it's confirmed by the reference canon. Here, I suggested to you in your main argument that the natural reading of this statute would be all violations as of the time the defendant is acting, because it hardly makes sense to think he would be going back and looking to see what — what the statute prohibited years earlier. So why would we get to the — I mean, why does even JAMS suggest we get to the reference canon when what you're urging seems an unnatural reading of the statute? Because the Supreme Court has stated that there will all — has recognized that when the statute names another statute, there is inherently an ambiguity. It's inherently — And you weren't able to point us to a case that said that. Well, I — Your Honor, with respect, Kendall v. The United States — I'm sorry. One more time. Forgive me, Your Honor. I'm going too fast. Kendall v. The United States. Thank you. 37 United States 524 at 625, which states, after stating the reference canon, it states, and such adoption has always been considered as referring to the law existing at the time of adoption, and no subsequent legislation has ever been supposed to affect it. And such must necessarily be the effect in operation of such adoption. No other rule would furnish any certainty as to what was the law and would be adopting prospectively all changes that might be made in the law. Thank you. Could you just take a moment to respond to the government's argument that DD2 and DD3 cover distinct wrongs? It was certainly — they cover, in this case, exactly the same wrongs. They're separate statutes. I understand that. The difference is on DD3, he's entering the United States to do this. That seems — DD3 requires someone to be in the United States. Both statutes have an interstate commerce requirement or use of interstate instrumentalities. But certainly in this case, there was absolutely no distinction about which activity was under DD2 and which under DD3. But that doesn't matter, does it, if they've got different requirements? I mean, this is basically a — an argument about whether the statutes are duplicative, and they're arguing that they're not. The argument, Your Honor, below — here was twofold. First, that the statutes were intended not to be overlapping, not to — not to be overlapping, that persons who were subject to one were not to be subject to the other. That's an element — that's an argument of what the legislative intent was. We cite the statutory — excuse me, legislative history for that proposition in our brief. The second argument was — We don't start there. We start with the language. We start with the language which we respectfully submit, given that the statute exempts domestic concerns, indicates that they were intended to be separate. Right. But your client was advised beforehand, and the case went to the jury, not that he was a domestic concern, but that he aided and abetted a domestic concern. He was its agent. And the government is saying, so that's what makes him liable under 78DD2. He could have committed that crime from Hong Kong. Instead, he set foot on U.S. soil, and they're saying that's what brings him within 78DD3. We need you to address why that isn't a persuasive argument. The answer is not because the elements are the same of the two. One, we do not suggest — don't argue as one is a — a contained offense of the other or lesser included. It's because the Congress intended them to be separate and for one person not to be charged with both for the same scheme. And furthermore, that's the — the congressional intent argument. But furthermore, here, because of the argument — Sotomayor, they have intended that because it didn't anticipate circumstances where a person would be guilty of both. I mean, don't we start with the two statutes and ensure that they do require proof of different things to make sure that there's no — Verrilli,, Your Honor? No impermissible use of the statutes? And, of course, this Court in Hoskins stated that DD3 was intended to cover persons who were not covered by DD2. And that was — I'm looking for the citation to that, but it is in Hoskins and is cited in our brief. And Hoskins, noting the carefully tailored text of the statute and the carefully delimited categories of persons, stated that they were intended to be separate — that DD3 was intended to cover persons not covered in DD1 and DD2. Is it your position that the defendant could, on the facts of this case, had to be convicted of both or neither? Because the government argues that that's not the case. No. I don't know. For instance, I think they think that he could have been committed on DD3 even if they didn't find that they were using the domestic concern because of the conflict you've tried to raise about what concern was operating at one time. So they're saying they needed to bring both charges, as I understand it, because it was possible they wouldn't find that his actions were on behalf of the domestic concern. They would find that it was on behalf of the Hong Kong concern. But here in the United States — Your Honor, I'm not saying that they had to be — that the jury had to go with both or with neither. We certainly argue that and — and submit that DD — there was insufficient evidence under DD2 because there was no evidence. Right. Exactly. You understand that our argument is that DD3 is different. There was evidence as to that. We don't challenge the sufficiency of the evidence as to that. We're saying that given that the grand jury said he is a domestic entity and that you cannot be a domestic entity and be under DD — and be convicted on DD3, he couldn't be convicted under that statute for that reason. All right. Thank you. Thank you. We'll reserve the decision.